THE STATE OF OHIO, APPELLEE, *v.* AMERICAN VETERANS POST NO. 250, APPELLANT.

(No. 2224—Decided August 12, 1987.)

*Frank C. Oehl,* assistant prosecuting attorney, for appellee.

*Damian J. Vercillo,* for appellant.

MAHONEY, P.J. Defendant-appellant American Veterans Post No. 250 pleaded no contest and was convicted of gambling in violation of R.C. 2915.02(A)(2). Defendant-appellant challenges its conviction on the basis that the warrantless seizure of its trash was unconstitutional since it had a reasonable expectation of privacy in its trash. We affirm.

### Facts

In 1986, the Wooster Police Department received anonymous information that there was an illegal gambling operation at the American Veterans Post No. 250 ("Amvets"). Shortly thereafter, Patrolman Donald G. Edwards, Jr. began trash surveillance looking for any material relating to gambling. On four nights in April and one night in May, Edwards drove up to a dumpster located in the Amvets' parking lot. Edwards would remove one bag of trash and return with it to the police station. At the police station, Edwards would sort through the trash and remove materials he thought were related to gambling. Edwards would then return the trash to the dumpster.

The Amvets' post is in a renovated gas station. There is a paved parking lot surrounding the building. The dumpster is located on the parking lot approximately five feet from the building and approximately twenty feet from the street. The dumpster is owned by Laidlaw Waste Systems. The parking lot is not enclosed in any manner.

As a result of the trash surveillance, the Wooster Police Department sought and obtained a search warrant to search the Amvets post. The search resulted in the seizure of gambling paraphernalia and several gambling machines.

Amvets moved to suppress this evidence on the ground that the warrantless search of the dumpster was invalid and therefore the evidence should be excluded as the fruit of the dumpster search. The Wayne County Municipal Court, Wooster Branch, overruled the motion to suppress. Amvets pleaded no contest to one count of gambling and was convicted. This appeal followed.

### Assignment of Error I

"The trial court erred in overruling defendant-appellant's motion to suppress evidence seized pursuant to a search warrant executed on May 2, 1986 as such order overruling said motion was against the manifest weight of the evidence and contrary to law; a

copy of said order overruling said motion is attached hereto, marked exhibit A."

The first question which should be resolved is whether the police could conduct a warrantless search on the Amvets' parking lot. The resolution of this question turns on whether the Amvets had a reasonable expectation of privacy in the parking lot. *Katz* v. *United States* (1967), 389 U.S. 347. Although the Fourth Amendment protects people and not places, *id.*, the United States Supreme Court recently set out a test to determine when a person has a reasonable expectation of privacy in areas surrounding his home in *United States* v. *Dunn* (1987), 480 U.S. ____, 94 L. Ed. 2d 326, 107 S. Ct. 1134. The Supreme Court set out the following four-pronged test:

"[1] The proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by." *Id.* at ____, 94 L. Ed. 2d at 334-335, 107 S. Ct. at 1139.

We note further that the fact the police may have been trespassing is not relevant to the Fourth Amendment analysis. *Oliver* v. *United States* (1984), 466 U.S. 170, 183-184. Accordingly, since the same Fourth Amendment protection is provided to Amvets Post No. 250 as would be given to a private home, we find that Amvets had no reasonable expectation of privacy in its parking lot. The Amvets parking lot bordered a city street and was not enclosed in any way. Any passerby could easily view the entire parking lot. Moreover, any of the Amvets one hundred fifty members, their guests, and presumably delivery vehicles could all use the parking lot. Applying the *Dunn* test, we find that the police could con-

duct a warrantless search of the Amvets parking lot. See *United States* v. *Reed* (C.A.8, 1984), 733 F. 2d 492, and *United States* v. *Rucinski* (C.A.10, 1981), 658 F. 2d 741.

The dispositive question to be resolved in this case is whether the police could conduct a warrantless search of the dumpster. Again, the validity of the search will turn upon whether Amvets had a reasonable expectation of privacy in the dumpster. *Katz, supra.*

In *Abel* v. *United States* (1960), 362 U.S. 217, the United States Supreme Court held that the Fourth Amendment does not apply to abandoned property. See *State* v. *Brown* (1984), 20 Ohio App. 3d 36, 20 OBR 39, 484 N.E. 2d 215, paragraph one of the syllabus. Both Amvets and the state cite cases which hold that garbage placed on the curb for collection is abandoned property and may be searched without a warrant. Amvets distinguishes these cases by noting in this case that the dumpster was not at the curb, but in the Amvets' parking lot. We do not find this argument persuasive. In this case, it would be impractical for Amvets to place a dumpster on the curb. Indeed, it would probably be necessary for the dumpster to be on the parking lot so that Laidlaw's trucks could empty the dumpster. The location of the dumpster does not indicate a lack of abandonment.

Amvets argues that it maintained a reasonable expectation of privacy in its trash because it is sometimes necessary for Amvets to search the trash to find items lost by members or their guests. This argument proves too much. If any of the Amvets members or their guests could rummage through the trash, Amvets could not expect its trash to remain private. We also note that the dumpster was not owned by Amvets but rather was owned by Laidlaw. Thus, we find that Amvets

did not have a reasonable expectation of privacy in the dumpster and the police validly conducted a warrantless search of the dumpster.

Finally, Amvets argues that the items seized were not gambling paraphernalia on their face and therefore did not constitute probable cause for a search warrant to issue. However, after a review of the record and the description of the items seized, we find that in common experience and certainly in the experience of the police officer involved, the items seized were reasonably believed to be gambling paraphernalia. Thus, under the totality of the circumstances, we find that the search warrant was issued on probable cause. *Illinois* v. *Gates* (1983), 462 U.S. 213; *State* v. *Brown, supra,* at paragraph four of the syllabus.

### Summary

Defendant-appellant's assignment of error is overruled and the conviction is hereby affirmed.

*Judgment affirmed.*

BAIRD and GEORGE, JJ., concur.