THE STATE OF OHIO, APPELLEE, *v.* JOHNSON, APPELLANT.

(No. 50963—Decided
October 20, 1986.)

*John T. Corrigan,* prosecuting attorney, and *Ester D. Harber,* for appellee.

*Marguerite J. Foley,* for appellant.

PARRINO, J. Defendant Larry Johnson appeals his conviction of one count of drug abuse in violation of R.C. 2925.11, and one count of possession of drugs for sale in violation of R.C. 4729.51(C). For the reasons discussed below, the trial court's judgment is affirmed.

## I

The facts relevant to the instant appeal are as follows.

On the evening of May 2, 1985, Cleveland Police Officers Raymond McGann and Rick Warner were assigned to patrol in the area of East 55 Street and Outhwaite Avenue.[1] Special attention was being given to that area because of its high degree of illegal drug activity.

At approximately 9:15 p.m., the officers noticed a male acting suspiciously. The individual was at the corner of East 55 and Outhwaite allegedly hiding behind a tree trying to avoid the police. Officers McGann and Warner got out of the patrol car, approached the individual, and asked him his name. The individual identified himself as Larry Johnson. A routine warrant check revealed an active warrant on Larry Johnson.

Johnson was placed under arrest.

---

[1] The officers were in uniform and were patrolling in a marked police car.

He was advised of his *Miranda* rights and the police conducted a pat-down. The pat-down uncovered illegal drugs. The illegal drugs found in Johnson's possession resulted in a June 18, 1985 indictment on two counts of drug law violations.

On July 17, 1985, Johnson filed a motion to suppress the evidence seized. Johnson argued that the police had neither a warrant nor probable cause to justify the stop and arrest. At the August 5, 1985 hearing on the motion, Officer McGann testified to the facts set forth above. The defendant testified that he was not hiding behind the tree. Further, the defendant testified that he was approached by an undercover officer who ordered him over to the patrol car for a warrant check. The trial court overruled the defendant's motion to suppress, holding the stop was valid.

Subsequent to the trial court's denial of the motion, the defendant entered a plea of no contest to the indictment. The trial court found the defendant guilty and on September 16, 1985, sentenced the defendant to a definite term of six months. The sentence was suspended and the defendant was placed on one year's probation.

The defendant filed a timely appeal from the trial court's judgment raising a single assignment of error.

## II

Assignment of error:

"'The trial court erred by overruling appellant's motion to suppress evidence and thereby violated appellant's right to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, § 14 of the Ohio Constitution."

The appellant maintains that the police officers' initial contact with him

violated the Fourth Amendment to the United States Constitution. The contact in question consisted of two uniformed police officers approaching the defendant and asking him his name. The defendant then waited while the police checked for outstanding warrants.

The Fourth Amendment to the United States Constitution protects the individual against unreasonable searches and *seizures.* Our first inquiry is whether the police officers' contact with the defendant constituted a seizure.

The United States Supreme Court has acknowledged that not all personal intercourse between the police and citizens involves the "seizures" of persons. *Reid* v. *Georgia* (1980), 448 U.S. 438; *Terry* v. *Ohio* (1968), 392 U.S. 1, 44 O.O. 2d 383. The test for determining whether there has been a seizure is whether, under the circumstances presented, a reasonable person would have believed he or she was not free to leave. *United States* v. *Mendenhall* (1980), 446 U.S. 544, 554. The freedom of movement may be curtailed by the police either by force or show of authority. *Dunaway* v. *New York* (1979), 442 U.S. 200.

In the case at bar, the defendant was approached by the police and asked his name. Although the police were in uniform, their guns were not drawn and the defendant was not ordered to do anything. The defendant voluntarily gave his name to the police and a routine warrant check was conducted. The check revealed that the defendant had an outstanding warrant.

At that point, the police seized the defendant placing him under arrest.

We do not believe that the mere presence of uniformed officers constitutes a seizure under the Fourth Amendment. Neither does the fact that police asked, and the defendant answered, a question as to his identity.[2] As stated by the United States Supreme Court in *Florida* v. *Royer* (1983), 460 U.S. 491, 497:

" * * * [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. * * *" (Citations omitted.)

Accordingly, we conclude that the defendant was not seized until after the police were aware of an outstanding warrant on the defendant.[3] If there is no seizure within the meaning of the Fourth Amendment, then no constitutional right has been infringed. *Id.* at 498. Therefore, the trial court properly overruled the defendant's motion to suppress.

It must also be noted that even assuming the initial contact constituted a seizure, the police were justified in making the stop.

It is well-established that stops which are less intrusive than a traditional arrest may be justified with something less than probable cause. *United States* v. *Brignoni-Ponce* (1975), 422 U.S. 873, 880-881. In *State*

---

[2] The fact that Officer McGann testified that if the defendant had attempted to flee he would have been stopped, does not establish a seizure. The test of whether an individual is seized is objective and must be based on facts relating to what *actually* occurred.

[3] The defendant does not contend that the police have no right to arrest an individual with an outstanding warrant. Instead, he argues that if the initial contact was unlawful, then the subsequent arrest and patdown would also be unlawful.

v. *McFarland* (1982), 4 Ohio App. 3d 158, 4 OBR 252, 446 N.E. 2d 1168, this court discussed the criteria in determining whether the stop was justified. The court stated as follows:

"Where the intrusion into a person's freedom is slight, it may be justified under the Fourth Amendment by a strong public interest such as prevention of crime, preservation of evidence from destruction, or safety of police officers. Where there is a minimal intrusion upon a person's liberty, it may be justified by a police officer's reasonable suspicion that the person is engaged in criminal activity if the officer can specifically articulate reasons underlying his suspicion. * * *" *Id.* at 159, 4 OBR at 253, 446 N.E. 2d at 1170.

The court stated further:

"Therefore, we must examine the specific circumstances of the detention here to determine whether the extent of the police intrusion on defendant's liberty was justified by a sufficiently strong suspicion based on specific and articulable facts. If so, the temporary detention was lawful, and the subsequent arrest based on reasonable cause ascertained during the detention was valid. * * *" *Id.* at 160, 4 OBR at 254, 446 N.E. 2d at 1171-1172.

Applying the considerations set forth in *McFarland,* we must conclude that the stop was justified. First, it is clear that at best the intrusion into the defendant's freedom was slight. The officers simply asked him his name. Second, the police were able to articulate a reasonable suspicion which would justify such an intrusion. The officers were located in a high crime area, and observed the defendant hiding behind a tree trying to avoid them. While these facts certainly do not rise to the level of probable cause, they do constitute sufficient facts to permit an officer to simply ask the defendant his name.

Finally, the cases relied upon by the appellant, *i.e., State* v. *Mallory* (July 28, 1983), Cuyahoga App. No. 45736, unreported; *State* v. *Andino* (Feb. 16, 1984), Cuyahoga App. Nos. 46943, 46944 and 46945, unreported; and *Brown* v. *Texas* (1979), 443 U.S. 47, are distinguishable from the facts of the case at bar. In *Mallory* and *Brown* the police officers' only justification for the stop was that the defendant was in a high crime area. In the instant case, however, the police stated that the defendant avoided them by hiding behind a tree. The case at bar is distinguishable from *Andino* in that in *Andino* the officers' intrusion was greater. In *Andino* the officers conducted a full search, while all the police did in the case at bar was to ask the defendant his name.

III

The trial court's judgment is affirmed.

*Judgment affirmed.*

NAHRA, P.J., and CORRIGAN, J., concur.